

### In United States District Court
### For the District of Delaware

UNITED STATES OF AMERICA

          v.

Criminal Complaint

CASE NUMBER:   07-**227 M**

JULIO GONZALEZ,

          Defendant

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about _ January 17, 2007, through October 17, 2007,_ in the District of Delaware and elsewhere, Defendant

### JULIO GONZALEZ

knowingly (a) forged, counterfeited, altered, or falsely made a document prescribed by statute or regulation as evidence of authorized stay or employment in the United States, and has possessed any such document knowing the same to be forged, counterfeited, altered, or falsely made; (b) knowingly transferred an identification document, knowing that such document was stolen or produced without lawful authority; and (c) for the purpose of obtaining a payment or for any other purpose, sold a card that is or purports to be a Social Security card;

in violation of Title _____ 18 _____ United States Code, Section(s) _1028(a)(2), 1546; and Title _____ 42 _____ United States Code, Section(s) _408(a)(7)(C).

I further state that I am a(n) _ Special Agent, Bureau of Immigration and Customs Enforcement _ and that this complaint is based on the following facts:

        See attached Affidavit

Continued on the attached sheet and made a part hereof:    Yes

David B. Yeary
Bureau of Immigration and Customs Enforcement

Sworn to before me and subscribed in my presence,

_Noember 13, 2007_    at

Date

_Wilmington, DE_

City and State

Honorable Leonard P. Stark
_United States Magistrate Judge_

Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

I, David B. Yeary, being duly sworn, depose and say:

1.      I am a Special Agent with the United States Department of Homeland Security, Bureau of Immigration & Customs Enforcement (ICE), Dover, Delaware. I have been employed as a Special Agent since January 25, 2003, when I was employed by the INS. The INS was transferred to the U.S. Department of Homeland Security as the Bureau of Immigration & Customs Enforcement in March 2003.

2.      The following information was developed from your affiant's personal knowledge and from information provided by State of Delaware government agencies and INS/ICE records.

3.      On January 17, 2007, your affiant received a phone call from a Delaware State Police Detective. The detective informed your affiant that he had been approached by an individual in Georgetown, Delaware. This individual (later determined to be Julio Gonzalez) claimed to be an agent with the International Driver's License in Washington D.C. Gonzalez asked the detective (who was not in uniform nor readily identifiable as a police officer) if he had any workers, and subsequently told the detective that he could make identification documents for his workers. Gonzalez opened the trunk of his vehicle and showed the detective a portfolio of different identification cards. One of the cards appeared to be a Maryland Driver's License with Gonzalez's picture on it. Gonzalez provided the detective with a contact phone number.

4.      The detective recorded the registration number from the individual's vehicle. A DMV records query indicated that the vehicle is registered to Julio Gonzalez, and a further DMV license query provided a picture of Julio Gonzalez. The detective confirmed that this was the individual that had approached him in Georgetown.

5.      On May 3, 2007, the DSP detective (continuing to act in an undercover capacity) placed a call Julio Gonzalez and inquired about purchasing identification documents for one of his "workers." Gonzalez instructed the detective to met him at Lancelot Motors in Georgetown, DE. Subsequently, the detective, along with an ICE Confidential Informant, met with Gonzalez at Lancelot Motors. The ICE CI paid Gonzalez $150.00 for a Delaware Driver's License, and gave Gonzalez a photo to be used on the license. Gonzalez stated he would call the CI when the license was ready. Gonzalez also stated that it would cost $1,500.00 for a Permanent Resident Alien Card and Social Security Card. Gonzalez said he knows of people who have these documents and work at the poultry plants.

6.      On June 6, 2007, a telephone call was placed by the ICE CI to Julio Gonzalez regarding a Lawful Permanent Resident card (I-551). Gonzalez told the CI that he would need two photos for the Resident Alien Card and directed the CI to a particular vendor to obtain the photos. The CI purchased the photos then proceeded to Lancelot Motors to meet Julio Gonzalez. At Lancelot Motors, Gonzalez gave the CI a Delaware

Identification Card with his photo on it. Gonzalez told the CI that he could get him the Permanent Resident Alien Card and a Social Security Card. Gonzalez had the CI sign a blank piece of paper with the name that was on the Delaware Identification card, "Carlos Rodriguez." The CI gave Gonzalez the two photos and paid him half of the amount due ($750.00), with the other half to be paid when the CI received the documents.

7.      On July 26, 2007, the ICE CI met with Julio Gonzalez at Lancelot Motors to receive the fraudulent Permanent Resident Alien Card that was purchased on June 6, 2007. Gonzalez gave the documents to the CI, who verified the information on the documents. These documents were turned over to your affiant. Your affiant is aware that a Lawful Permanent Resident Alien card is a document prescribed by statute or regulation as evidence of authorized stay or employment in the United States.

8.      On September 18, 2007, a second ICE CI ("CI 2") contacted Julio Gonzalez and inquired about obtaining fraudulent immigration documents. Gonzalez informed CI 2 that he could provide Puerto Rican Birth Certificates and Social Security Cards, along with state identification documents. Each set of documents would cost $1000.00. CI 2 requested five (5) sets of documents from Gonzalez and agreed to pay half of the cost ($2,500.00) up front. Gonzalez and CI 2 arranged to meet on September 27, 2007, in Georgetown, DE.

9.      On September 27, 2007, a telephone call was placed by CI 2 to set up a meeting with Gonzalez. Gonzalez informed CI 2 that he was at work at Lancelot Motors and would meet CI 2 there. At the meeting, Gonzalez informed the CI that it would take approximately one week for the documents to be completed, and that he would call CI 2 when the documents were ready. The CI paid Gonzalez $2,500.00, and furnished Gonzalez with five (5) photos. Gonzalez informed the CI that it would take one or two weeks for the documents to be ready, and that he would need other $2,500.00 at that time.

10.     On October 15, 2007, Gonzalez contacted CI 2 and stated that the documents were ready to be picked up. Gonzalez told CI 2 to bring the remaining $2,500.00 for the documents.

11.     On October 17, 2007, a telephone call was placed by CI 2 to set up a meeting with Julio Gonzalez. Gonzalez informed CI 2 that he was at work at Lancelot Motors and would meet CI 2 there. CI 2 subsequently met the target Julio Gonzalez at Lancelot Motors and received four (4) sets of authentic Puerto Rican Birth Certificates and Social Security Cards in the names of other individuals, and one (1) authentic Texas Birth Certificate and Social Security Card in the name of another individual. These documents were turned over to your affiant. Your affiant is aware from related investigations that identity document vendors in Delaware obtain such authentic identity documents from individuals in Puerto Rico, typically through the U.S. Mail.

WHEREFORE, your affiant avers that there is probable cause to believe that Julio Gonzalez has knowingly forged, counterfeited, altered, or falsely made a document prescribed by statute or regulation as evidence of authorized stay or employment in the United States, and has possessed any such document knowing the same to be forged, counterfeited, altered, or falsely made, in violation of Title 18, United States Code, Section 1546; has knowingly transferred an identification document, knowing that such document was stolen or produced without lawful authority, in violation of Title 18, United States Code, Section 1028(a)(2); and has, for the purpose of obtaining a payment or for any other purpose, sold a card that is or purports to be a Social Security card, in violation of Title 42, United States Code, Section 408(a)(7)(C).

David B Yeary
Special Agent
U.S. Immigration & Customs Enforcement

Sworn to and subscribed before me
This ⎧3ᵗʰ day of November, 2007

HONORABLE LEONARD P. STARK
UNITED STATES MAGISTRATE JUDGE